**Harold CURTIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 55158.**

Court of Criminal Appeals of Texas, Panel No. 1.

Oct. 18, 1978.

Rehearing En Banc Denied Nov. 28, 1978.

Jose E. Camacho, Austin, for appellant.

Ronald D. Earle, Dist. Atty. and Richard E. Banks, Asst. Dist. Atty., Austin, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

DOUGLAS, Judge.

Harold Curtis appeals from his conviction for the offense of voluntary manslaughter. His punishment was assessed by the jury at fifteen years. He attacks the sufficiency of the evidence, the refusal of the trial court to submit his requested instructions on simple assault, aggravated assault and independent impulse, and the alleged systematic exclusion of 18–21 year olds from the grand jury which returned the instant indictment. We overrule these contentions and affirm.

This case arose out of the 1975 murder of Austin police officer Leland Anderson. Walter Jennings was separately tried and convicted for the offense; his punishment was assessed at life. Robbie Slaughter, a co-indictee, was also convicted for the offense and was assessed a term of thirty years upon his plea of guilty.

■ Appellant was indicted for the offense of murder; he was convicted of the lesser included offense of voluntary manslaughter. While the evidence does not show the offense was committed under the influence of sudden passion arising from adequate cause, V.T.C.A., Penal Code, Section 19.04, his conviction must be sustained if sufficient evidence was introduced to support a finding of guilt on the greater offense of murder. Article 40.03, Section 9, V.A.C.C.P. There was sufficient evidence to show that the greater offense of murder was committed.

At 7:00 p. m. on June 6, 1975, Officer Leland Anderson was on patrol on Congress Avenue in downtown Austin. He stopped at the corner of 8th and Congress to question appellant concerning his sale of some papers on the sidewalk. After a brief discussion, Officer Anderson radioed a request for a warrant check on appellant. At this time, appellant was observed waving toward a white van driving down Congress. The driver of the van, Walter Jennings, waved back and indicated that he would park the vehicle around the block and rejoin appellant. Jennings did so and Anderson requested a warrant check on him, also.

During the next few minutes a rather heated discussion took place between Anderson on the one hand and Curtis and Jennings on the other. The latter pair became highly sarcastic and belligerent toward the deceased. Travis County Sheriff's Reserve Deputy John Adams was standing nearby. He identified himself to Anderson and offered his assistance. Anderson requested that he stay in the area. Approximately two minutes after radioing his request for a warrant check, Anderson received a response indicating that there existed two outstanding warrants for appellant's arrest. Anderson told Curtis that they would have to go to the police station. He reached for the sheaf of newspapers which appellant held in his hands. Appellant refused to let go of the papers and began struggling over them with the officer. At this point Walter Jennings jumped Anderson from behind and began hitting and punching him with his fists. Appellant almost immediately jumped Anderson from the front. Both men beat the officer until, a few seconds later, Deputy Adams placed appellant in a "choke-hold" and thereby subdued him. Appellant was dragged by Adams to the vicinity of the deceased's police car. In the meantime Jennings continued to fight with Officer Anderson. The fray moved to the middle of 8th Street where Anderson's police revolver appeared over the heads of the two men. As both clutched at the gun, Robbie Slaughter appeared and attacked Anderson as well. Jennings was seen jerking the deceased's head back sharply; the officer fell to the ground and was further beaten and kicked by Jennings and Slaughter. Jennings obtained control of Anderson's gun, bent over him and fired two shots into his chest. Following the shots, Deputy Adams released appellant in order to go radio for help. Appellant, Jennings and Slaughter reunited, jumped into the white van and fled. The total elapsed time between notification of appellant's outstanding warrants and the shooting of the deceased was only forty-one seconds.

The defendants' fleeing van was spotted and pursued by an unmarked police car. As officers pulled alongside the van they saw

Jennings driving and appellant standing beside him. Gunfire was exchanged and the chase continued into east Austin. A second police car joined the chase and saw the defendants' gun being thrown out the window on the passenger side. The van jumped a curb at Fourth Street and Chicon and rammed a police car which was in pursuit. As the van attempted to round a corner at Fourth and Chalmers, it overturned. The occupants refused to respond to police orders to exit the van. One officer broke the vehicle's rear window, removed the trio and placed them under arrest.

The State called Dr. Coleman de Chenar, the physician who performed the autopsy, and James Watkins, a funeral director and embalmer who assisted in the autopsy and prepared the deceased's body for burial. The testimony of these two witnesses reflects that as a result of the beating inflicted upon him Anderson received numerous facial contusions, his nose was broken, his upper lip was severely crushed and his ear was swollen and deformed. His neck had been violently stretched to the point of near separation from the cranium. His scrotum and testicles were badly bruised. Death was caused by the passing of a bullet through both lungs causing their collapse and the victim's suffocation.

The indictment charged, in pertinent part, that appellant

"did then and there knowingly and intentionally cause the death of Leland Anderson by shooting him with a pistol."

The issue is whether sufficient evidence was adduced from which the jury could have found appellant guilty beyond a reasonable doubt as a party to the instant offense. Such evidence must have shown that appellant was physically present at the commission of the offense and solicited, encouraged, directed, aided or attempted to aid Walter Jennings in the commission of the offense, either by words or other agreement. V.T.C.A., Penal Code, Section 7.02(a)(2); *Baldridge v. State*, 543 S.W.2d 639 (Tex.Cr.App.1976); *Suff v. State*, 531 S.W.2d 814 (Tex.Cr.App.1976); *Bush v. State*, 506 S.W.2d 603 (Tex.Cr.App.1974).

Appellant contends that the second of these requirements has not been satisfied. He further contends that the actions of Walter Jennings were by themselves so clearly sufficient to produce the death of the decedent as to render appellant free of criminal responsibility for the offense.

We do not agree. The fact that appellant did not participate in the actual shooting of the deceased is immaterial. *Ex parte Prior*, 540 S.W.2d 723 (Tex.Cr.App. 1976); *Bush v. State*, supra. This Court may look to events occurring before, during and after the commission of the offense and reliance may be placed on actions which show an understanding and common design to do a certain act. *Ex parte Prior*, supra; *Bush v. State*, supra; *Holloway v. State*, 525 S.W.2d 165 (Tex.Cr.App.1975).

It is conceded that appellant was present at the commission of the offense. The evidence showed, moreover, that although appellant did not land the first blow against Officer Anderson he did initiate the physical struggle which culminated in Anderson's death. The evidence further showed that prior to his entry into the fight appellant could see that Jennings was hitting and punching Anderson with the obvious intent to injure the officer. It was with the knowledge that his co-defendant intended to beat up the deceased that appellant then joined in the fray and knowingly and intentionally assisted Jennings in committing aggravated assault on the deceased by attacking him from the front. The record gives every indication that appellant would have continued to beat the deceased had he not been dragged away by Deputy Adams. The fact that an intervening bystander stopped appellant's participation in the fight did not negate appellant's intent to aid in the assault. Later, with the knowledge that Jennings had shot the deceased, appellant nevertheless rejoined him in the escape. The evidence shows an implicit agreement to commit the offense formulated contemporaneous with the offense. *Suff v. State*, supra. Whether words evidencing such agreement were uttered between appellant and Jennings is of no con-

sequence. *Barron v. State*, 566 S.W.2d 929 (Tex.Cr.App.1978).

▇▇▇▇ Appellant urges, however, that to support his conviction for murder, and hence manslaughter, it is not enough that he participated in the initial assault. Contrary to this contention, it does not matter that the offense originally intended by appellant, aggravated assault, subsequently escalated into murder. Where several people act together in pursuit of an unlawful act each one is liable for collateral crimes, even though unplanned and unintended, if those crimes are the foreseeable, ordinary and probable consequences of the preparation or execution of the unlawful act. *Thompson v. State*, 514 S.W.2d 275 (Tex.Cr. App.1974). This Court has held that where no deadly weapon is used to kill a deceased the relative size and strength of the parties, the manner of the attack and the wounds inflicted may be considered in determining a defendant's intent to kill. *McDonough v. State*, 147 Tex.Cr.R. 111, 178 S.W.2d 863 (1944). Inasmuch as his death would have been a foreseeable consequence of the assault, appellant was liable for the collateral crime of murder whether or not there existed any prior agreement to commit the latter offense. *Thompson v. State*, supra; V.T.C.A., Penal Code, Section 6.04(b)(1).[1]

The evidence is sufficient to show that participating in the beating of Leland Anderson appellant aided or attempted to aid Walter Jennings in the murder of the deceased.

He contends that the evidence is confusing as to whether he actually inflicted injury on the deceased. He concedes that he was a party to the assault on Officer Anderson until he was dragged away by Deputy Adams. The record shows that the deceased sustained severe injuries, almost all of which were frontal. Appellant attacked the deceased from the front. The jury could reasonably have concluded that at least a portion of the injuries sustained were inflicted by the appellant.

▇▇▇▇ Whether or not appellant's blows actually caused injury is not determinative of guilt. V.T.C.A., Penal Code, Section 6.04(a), provides that one who operates concurrently with another is criminally responsible for the other's behavior unless the concurrent cause was by itself clearly sufficient to produce the result. The record shows that Deputy Adams remained on the scene for the specific purpose of assisting Officer Anderson. It is unlikely that Walter Jennings could have incapacitated and shot the deceased had Deputy Adams been available to come to the deceased's aid. Adams was prevented from doing so because of his preoccupation with controlling appellant. The jury could reasonably have concluded that by preventing Adams from going to the aid of the deceased appellant assisted Jennings in effectuating his murder. *Binyon v. State*, 545 S.W.2d 448 (Tex. Cr.App.1976).

Complaint is next made of the court's refusal to submit requested charges on the lesser offenses of simple and aggravated assault.

▇▇▇▇ There is no question that the deceased sustained serious bodily injury as a result of the beating perpetrated by appellant and his co-defendants. A charge on simple assault was not, therefore, raised by the evidence. A charge on the offense of aggravated assault would have been required only if testimony was introduced from some source which indicated a lack of intent on the part of appellant, acting as a party, to kill the deceased. *Payne v. State*, 516 S.W.2d 675 (Tex.Cr.App.1974); *Davis v. State*, 516 S.W.2d 157 (Tex.Cr.App.1974); *Machado v. State*, 494 S.W.2d 859 (Tex.Cr. App.1973). No such evidence was introduced to support this or any other defensive

1. V.T.C.A., Penal Code, Section 6.04(b)(1), which codifies the common law doctrine of transferred intent, provides:

"  .   .   .

"(b) A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:

"(1) A different offense was committed."

theory. A jury charge on aggravated assault was not required.

Appellant urges that the court erred in failing to submit the following requested charge on "independent impulse":

"If there was no common intent and intent of all, including the Defendant, to commit the offense, or if the offense, if any was committed by one or more, acting independently of the Defendant in so doing and without participation by him in the intent to commit it, the Defendant is not guilty and if you have a reasonable doubt as to this issue, you must give the Defendant the benefit of the doubt and acquit him."

Such a charge would have been contrary to the established law of criminal responsibility as set forth in V.T.C.A., Penal Code, Section 6.04(b)(1). We have already determined that if appellant knowingly and intentionally participated with co-defendant Jennings in assaulting the deceased he was criminally responsible for the collateral and foreseeable offense of murder whether or not he had the intent to actually kill the deceased. Furthermore, any error committed by the court in refusing to submit appellant's requested charge would have been harmless. The court's charge on the law of parties fully protected appellant's rights in the area of criminal responsibility. *Randolph v. State*, 493 S.W.2d 869 (Tex.Cr.App. 1973).

It is finally contended that the court erred in overruling appellant's motion to quash the indictment on the grounds that the Travis County grand jury selection process systematically excludes persons aged 18–21. With regard to whether 18–21 year olds constitute a distinctive group in Travis County, appellant alleges that the "generation gap" is not a cliche but a reality. Such a statement is hardly evidence upon which we may rely. Indeed, appellant has presented no evidence whatsoever to either the trial court or this Court to show that such individuals constitute a distinctive group, that they are systematically excluded from Travis County grand juries in general or that they were excluded from the grand jury which indicted appellant in particular. See *Tibbetts v. State*, 494 S.W.2d 552 (Tex.Cr.App.1973). Even were 18–21 year olds to be considered a distinctive group comparable to racial minorities, appellant's contention would be without merit. It has been repeatedly held that the Constitution requires that grand juries be selected without discrimination as to race, but that it does not require proportional representation of races on grand jury panels. *Akins v. Texas*, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945); *Rodriguez v. State*, 513 S.W.2d 22 (Tex.Cr.App.1974). Likewise, there need not be proportional representation of that segment of the population that is aged 18–21 on each and every grand jury selected in Travis County.

No error is shown. The judgment is affirmed.