PD-1641-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/14/2015 11:29:58 PM
Accepted 1/16/2015 2:09:11 PM
ABEL ACOSTA
CLERK

FILED IN
COURT OF CRIMINAL APPEALS

JANUARY 16, 2015

ABEL ACOSTA, CLERK

**PD-1641-14**

# IN THE COURT OF CRIMINAL APPEALS
## OF THE STATE OF TEXAS

---

### KIRBY HALL
*Petitioner/Appellant*

**v.**

### THE STATE OF TEXAS
*Respondent/Appellee*

---

On Petition for Discretionary Review from the Fourteenth Court of Appeals
In Cause No. 14-13-00742-CR, affirming the conviction in
Cause No. 1394653 from the 228th District Court of Harris County, Texas

---

## PETITION FOR DISCRETIONARY REVIEW

---

ORAL ARGUMENT REQUESTED

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**FRANCES BOURLIOT**
Assistant Public Defender
Harris County, Texas
Texas Bar No. 24062419
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 437-4317
frances.bourliot@pdo.hctx.net

**Counsel for Petitioner**

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:                                   Kirby Hall
                                             TDCJ # 01880638
                                             Alfred Hughes Unit
                                             Route 2 Box 4400
                                             Gatesville, Texas 76597


TRIAL PROSECUTORS:                           Ms. Gretchen Flader
                                             Ms. Jane Waters
                                             Assistant District Attorneys
                                             Harris County, Texas
                                             1201 Franklin, Suite 600
                                             Houston, Texas 77002


DEFENSE COUNSEL AT TRIAL:                    Rudy Duarte
                                             2016 Main, Suite 103
                                             Houston, Texas 77002


PRESIDING JUDGE:                             Hon. Marc Carter
                                             228th District Court
                                             Harris County, Texas
                                             1201 Franklin, 16th Floor
                                             Houston, Texas 77002


COUNSEL ON APPEAL FOR APPELLANT:             Frances Bourliot
                                             Assistant Public Defender
                                             Harris County, Texas
                                             1201 Franklin, 13th Floor
                                             Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL .................................................................ii

TABLE OF CONTENTS.....................................................................................iii

INDEX OF AUTHORITIES ............................................................................... iv

STATEMENT REGARDING ORAL ARGUMENT ......................................................1

STATEMENT OF THE CASE..............................................................................1

STATEMENT OF PROCEDURAL HISTORY..............................................................1

QUESTION FOR REVIEW .................................................................................1

> DID THE COURT OF APPEALS err WHEN IT FOUND THAT YBARRA AND GARZA WERE NOT ACCOMPLICES AND THAT THE EVIDENCE WAS LEGALLY SUFFICIENT TO UPHOLD MR. HALL'S CONVICTION?

REASON FOR GRANTING REVIEW ...................................................................... 2

ARGUMENT ................................................................................................ 2

PRAYER .................................................................................................... 8

CERTIFICATE OF SERVICE ............................................................................... 9

CERTIFICATE OF COMPLIANCE ........................................................................ 9

# INDEX OF AUTHORITIES

## Cases

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ........................................................6

*Casanova v. State*, 383 S.W.3d 530 (Tex. Crim. App. Nov. 21, 2012)..........................................7

*Castillo v. State*, 221 S.W.3d 689 (Tex. Crim. App. 2007) .....................................................7

*Curtis v. State*, 573 S.W.2d 219 (Tex. Crim. App. 1978). ......................................................6

*Hall v. State*, 14-13-00742-CR, 2014 WL 6085585 (Tex. App.—Houston [14th Dist.] Nov. 13, 2014)............................................................................................... 1, 5

*Hooper v. State*, 214 SW.3d 9 (Tex. Crim. App. 2007) ...........................................................2

*Jackson v. Virginia*, 443 U.S. 307 (1979)............................................................... 2, 6

*Nava v. State*, 379 S.W.3d 396 (Tex. App. – Houston [14th Dist.] 2012, aff'd 415 S.W.3d 289 (Tex. Crim. App. 2013)....................................................................................6

*Temple v. State*, 342 S.W.3d 572 (Tex. App.--Houston. [14th Dist.] 2010, no pet.)..........6

*Thompson v. State*, 514 S.W.2d 275 (Tex. Cr. App. 1974)......................................................6

*Wincott v. State*, 59 S.W.3d 691 (Tex.App.-Austin 2001, pet. ref'd) ...................................7

## Statutes

Tex. Code Crim. Proc. art. 38.14. ...................................................................................5

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument as it may aid the Court since the analysis of this case depends upon a detailed review of the record.

## STATEMENT OF THE CASE

This petition seeks review of a direct appeal brought after a conviction for aggravated assault of a peace officer. On August 12, 2013, Mr. Hall's case was called for a jury trial; he was arraigned and entered a plea of not guilty. (3 R.R. at 19). On August 15, 2013, the jury found Mr. Hall guilty as charged in the indictment. (5 R.R. at 108). On August 16, 2013, the trial court assessed his punishment at fifty (50) years confinement in the Texas Department of Criminal Justice – Institutional Division. (6 R.R. at 60).

## STATEMENT OF PROCEDURAL HISTORY

On November 13, 2014, in an unpublished memorandum opinion, the Fourteenth Court of Appeals affirmed Mr. Hall's conviction. *Hall v. State*, 14-13-00742-CR, 2014 WL 6085585 (Tex. App.—Houston [14th Dist.] Nov. 13, 2014). *See* Appendix. No motion for rehearing was filed.

## QUESTION FOR REVIEW

DID THE COURT OF APPEALS ERR WHEN IT FOUND THAT YBARRA AND GARZA WERE NOT ACCOMPLICES AND THAT THE EVIDENCE WAS LEGALLY SUFFICIENT TO UPHOLD MR. HALL'S CONVICTION?

1

## REASON FOR GRANTING REVIEW

The opinion of the Fourteenth Court of Appeals conflicts with decisions by this Court and the Supreme Court of the United States in that its determination that the evidence is legally sufficient conflicts with *Jackson v. Virginia*, 443 U.S. 307 (1979) and *Hooper v. State*, 214 SW.3d 9 (Tex. Crim. App. 2007).

## ARGUMENT

### DID THE COURT OF APPEALS ERR WHEN IT FOUND THAT YBARRA AND GARZA WERE NOT ACCOMPLICES AND THAT THE EVIDENCE WAS LEGALLY SUFFICIENT TO UPHOLD MR. HALL'S CONVICTION?

On the night that this incident occurred, several people including Ybarra, Garza, and Hall, gathered for a party at Rodriguez's house. (3 R.R. at 205). Ybarra and Rodriguez were very close. (3 R.R. at 204). Garza and Rodriguez had recently met and Rodriguez had picked up Garza to bring her to his party. (4 R.R. at 71-72). Later that evening, Ybarra agreed to drive Gonzalez and Garza home. (3 R.R. at 212). Hall had shown them a gun and Rodriguez suggested that they go to an area close to his ex-girlfriend's house to shoot the gun. (3 R.R. at 195). Ybarra drove Hall, Rodriguez, Garza, and Gonzalez to the area Rodriguez suggested to shoot the gun. (3 R.R. at 198-199). The group dropped Gonzalez off at home and, on the way to Garza's house, Rodriguez shot the gun out of the window. (3 R.R. at 202-203). Ybarra began to get nervous that someone would call the police because of the gunshots. (3 R.R. at 204).

Officer Alan Whitlock received a call around 2:00 a.m. and was dispatched to an apartment complex for a disturbance call. (3 R.R. at 39, 43). As he and the other units were walking back to the vehicles, they heard several rounds of gunfire in the area. (3 R.R. at 44). Whitlock observed two suspicious vehicles and decided to activate his lights and initiate a traffic stop. (3 R.R. at 49-53). Whitlock decided to call for another unit because he felt the passengers in Ybarra's car were making furtive movements; before Whitlock could call for another unit, the Cadillac started to roll forward slowly and turn left. (3 R.R. at 56-57). Whitlock followed the Cadillac and then saw the passenger in the back left side lean out of the window with a gun. (3 R.R. at 60, 62-63). He originally identified the driver as the shooter but in retrospect decided it must have been the back seat passenger because the car never stopped moving. (3 R.R. at 61, 94). Whitlock never looked at a photo spread because he did not believe he would be able to pick out the person who fired the shot. (3 R.R. at 82).

Ybarra testified that Hall told him not to stop the car after Whitlock had initiated the stop. After Ybarra stopped the car, Hall allegedly told Rodriguez to shoot the cop. (3 R.R. at 230-231). Ybarra tried to tell Rodriguez to throw the gun out of the car. (3 R.R. at 232). Rodriguez, however, passed the gun to Hall. (3 R.R. at 233-236). As Ybarra was driving off, he heard shots and saw Hall getting back into his seat. (3 R.R. at 233-236). Ybarra never saw Hall lean out of the car and shoot at Whitlock. (4 R.R. at 43). Rodriguez, Garza, and Hall eventually jumped out of the car. (3 R.R. at 238-40).

Ybarra ran to Rodriguez's aunt's house and Rodriguez called him while he was there. (3 R.R. at 218, 4 R.R. at 11-12). Garza ran with Rodriguez to his house. (4 R.R. at 103). About ten minutes later, Hall arrived at Rodriguez's house without the gun and stayed for a short time. (4 R.R. at 103-104).

Wanting to protect Rodriguez, Ybarra initially told the police that he was with two black males and a Puerto Rican. (4 R.R. at 15). Garza ran with Rodriguez to his house. (4 R.R. at 103).

Ybarra and Rodriguez were both no-billed by the grand jury on charges of attempted capital murder of a peace officer. (3 R.R. at 193-194, C.R. at 58). In connection with this case, Ybarra plead guilty to evading arrest in a motor vehicle. (4 R.R. at 23-24). Garza was charged with evading arrest in connection to this case and she pleaded guilty and received probation. (4 R.R. at 123-124).

Hall was found hiding in a tree. (5 R.R. at 20). When Hall was arrested and when he gave his buccal swab, he gave his name as Kendall Davis with a birthdate of October 9, 1988. (5 R.R. at 19-20). Law enforcement later found out that Kendall Davis's real name was Kirby Hall and that his real date of birth is May 10, 1989. (5 R.R. at 51). Hall had a warrant for his arrest out of Louisiana and that warrant was for an offense where he could get up to life in prison. (5 R.R. at 53).

GSR samples and buccal swabs were taken from several people, including Hall and Ybarra. (3 R.R. at 117-118, 125-126). The Cadillac was also swabbed for DNA residue and fingerprints. (3 R.R. at 175, 178). Hall's fingerprints were not found in any

of the swabs from the Cadillac. (3 R.R. at 182). No latent prints were found on any of the recovered shell casings. (3 R.R. at 190). The GSR analysis showed no particles present on Hall's hands or clothing. (4 R.R. at 179, 185). The GSR analysis of Ybarra was inconclusive. (4 R.R. at 179). None of the DNA swabs taken from the car matched Hall. (4 R.R. at 209).

Ybarra, Rodriguez, and Garza all knew that the gun was in the car and they had discussed a plan to shoot the gun over in an area that Ybarra and Rodriguez were familiar with. It should have been foreseen that shooting a firearm into a neighborhood might attract the attention of law enforcement and that in entering into that conspiracy someone might get shot. In fact, Ybarra was nervous that someone would call the police because of the gunshots. (3 R.R. at 204). Officer Whitlock heard those gunshots and, finding Ybarra's car suspicious, initiated a traffic stop—Ybarra drove away from Whitlock. (3 R.R. at 44, 56-57).

Mr. Hall challenged the legal sufficiency of the State's evidence regarding the aggravated assault, arguing that Ybarra and Garza were both accomplices as a matter of fact and that the independent corroborating evidence was insufficient. On appeal, the Court of Appeals found the evidence legally sufficient to support the judgment because: "[t]here is no evidence that Ybarra and Garza were appellant's accomplices as a matter of fact; therefore, there is no requirement of corroboration. See Tex. Code Crim. Proc. art. 38.14.". *Hall v. State*, 14-13-00742-CR, 2014 WL 6085585, at *4 (Tex. App.—Houston [14th Dist.] Nov. 13, 2014).

An appellate court is to apply a "rigorous" *Jackson v. Virginia* analysis of the sufficiency of evidence. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). *See, also, Temple v. State*, 342 S.W.3d 572, 628 (Tex. App.--Houston. [14th Dist.] 2010, no pet.) (McCally, J., dissenting to denial of rehearing en banc). In evaluating the sufficiency of the evidence, the appellate court must view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

"Where several people act together in pursuit of an unlawful act each one is liable for collateral crimes, even though unplanned and unintended, if those crimes are the foreseeable, ordinary and probable consequences of the preparation or execution of the unlawful act." *Thompson v. State*, 514 S.W.2d 275 (Tex. Cr. App. 1974); *Curtis v. State*, 573 S.W.2d 219, 223 (Tex. Crim. App. 1978). For example, in *Nava v. State*, three co-defendants entered into a conspiracy to commit felony theft by purchasing what they believed to be stolen televisions from an undercover police officer. While attempting to make this transaction, one of the co-defendants shot and killed the undercover officer. *Nava v. State*, 379 S.W.3d 396, 404-405 (Tex. App. – Houston [14[th] Dist.] 2012, aff'd 415 S.W.3d 289 (Tex. Crim. App. 2013). The court held the evidence was sufficient, finding that because the co-defendants knew that a gun was being brought to the transaction, the co-defendants who did not shoot the officer should have anticipated it was a potential result. *Nava*, 379 S.W.3d at 406.

The same logic applies to the case at bar. All of the parties knew of the gun and should have anticipated the potential of an aggravated assault. Thus, all are accomplices under the theory of party liability.

The testimony of an accomplice is inherently untrustworthy and should be viewed with caution because "the accomplice is a corrupt source who may well have improper incentives when testifying against the accused-e.g., to redirect blame or to gain favor with the State in exchange for a reduced punishment." *Wincott v. State*, 59 S.W.3d 691, 698 (Tex.App.-Austin 2001, pet. ref'd). In reviewing the sufficiency of the corroborating evidence, the appellate court must eliminate from its consideration all accomplice testimony and review the remaining portions of the record to determine "if there is any evidence that tends to connect the accused with the commission of the crime." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). The corroborating evidence does not need to be sufficient by itself to convict the accused. *Casanova v. State*, 383 S.W.3d 530 (Tex. Crim. App. Nov. 21, 2012).

Whitlock was not able to identify Hall as the shooter and there was no GSR, DNA, or fingerprint evidence linking Hall to the incident. None of Hall's clothes were found to have GSR even though the accomplices testified that Hall had shot the gun earlier that evening. In contrast, Ybarra's right hand had gunshot residue and Rodriguez's fingerprints and palm prints were found on the rear driver's side of the car. The fact the physical evidence more strongly indicates Ybarra or Rodriguez as the

shooter provides a motive to implicate Hall. This motive and attempt to shift blame is the very reason the accomplice witness rule exists.

Because there is no evidence other than the uncorroborated accomplice testimony that identifies Hall as the individual who shot at Whitlock, the evidence is legally insufficient to support a conviction for aggravated assault of a peace officer. The Court of Appeals erred in holding that Ybarra and Garza were not accomplices as a matter of fact and that the evidence was legally sufficient to prove that Mr. Hall committed an aggravated assault on a peace officer.

## PRAYER

Mr. Hall asks the Court to grant his petition and conduct a full review of his appeal in the Fourteenth Court of Appeals.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

/s/Frances Bourliot

_____

**FRANCES BOURLIOT**
Assistant Public Defender
Harris County, Texas
Texas Bar No. 24062419
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 437-4317
frances.bourliot@pdo.hctx.net

8

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing petition for discretionary review has been served on the District Attorney of Harris County, Texas, by e-file on the 14th day of January, 2015. A copy has also been sent by e-file to the State Prosecuting Attorney, also on the 14th day of January, 2015.

/s/Frances Bourliot

_____

Frances Bourliot

## Certificate of Compliance

Pursuant to proposed Rule 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of *Tex. R. App. Proc. 9.4(e)(i)*.

1.      This brief contains 2,669 words printed in a proportionally spaced typeface.

2.      This brief is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 13 point font in footnotes produced by Microsoft Word software.

3.      Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4.       Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in *Tex. R. App. Proc. 9.4(j)*, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

/s/Frances Bourliot

_____

Frances Bourliot

2014 WL 6085585
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**
**Do Not Publish—Tex. R.App. P. 47.2(b).**
Court of Appeals of Texas,
Houston (14th Dist.).

Kirby HALL a/k/a Kendell Davis, Appellant
v.
The STATE of Texas, Appellee.

No. 14–13–00742–CR.    |    Nov. 13, 2014.

On Appeal from the 228th District Court, Harris County,
Texas, Trial Court Cause No. 1394653.

**Attorneys and Law Firms**

Frances Young Bourliot, for Kirby Hall aka Kendell Davis.

Alan Curry, for State of Texas.

Panel consists of Chief Justice FROST and Justices
CHRISTOPHER and BUSBY.

**MEMORANDUM OPINION**

TRACY CHRISTOPHER, Justice.

 **\*1**  Appellant Kirby Hall a/k/a Kendell Davis appeals his
conviction for aggravated assault against a public servant
challenging the sufficiency of the evidence to support his
conviction. *See* Tex. Penal Code § 22.02(b)(2)(B). Finding
sufficient evidence to support appellant's conviction, we
affirm.

**I. BACKGROUND**

On September 1, 2011, Harris County Sheriff's Deputy Alan
Whitlock was dispatched to a disturbance in an apartment
complex. As he drove to the location of the disturbance
Whitlock heard shots fired. Soon after hearing the shots fired,
Whitlock observed a white Cadillac and a black car driving
very close together. Whitlock testified this was suspicious

in that it was approximately 2:00 a.m. and there were no
other cars in the area. When Whitlock pulled behind the white
Cadillac he noticed the passengers of the car making furtive,
suspicious movements. Whitlock turned on his emergency
lights to stop the Cadillac. When the driver of the car did not
stop, Whitlock turned on his siren and followed the car. As
the car went around a curve Whitlock saw the passenger in the
back left side behind the driver lean out of the window with a
gun. Whitlock could not identify the individual with the gun
other than his race, which was African–American. Whitlock
then heard gunfire and felt a bullet hit his chest.

Juan Ybarra, the owner of the white Cadillac, testified that
on the day of the offense, he went to Richard Rodriguez's
house to drink and to smoke marijuana with six or seven of
their mutual friends including Jose Gonzalez, Brianna Garza,
and appellant. At some point in the evening, Ybarra planned
to drive Gonzalez and Garza home. Appellant left the house
for a few minutes, returned with a rifle, and said to Ybarra,
"Let's go shoot this." At that point, Ybarra, Rodriguez, and
appellant decided to shoot the gun, then drive Gonzalez and
Garza home. Rodriguez knew of a location where neighbors
shot guns without anyone calling the police.

When they arrived at the location described by Rodriguez,
Ybarra stopped the car, appellant got out, shot the gun
in the air four or five times, and got back in the front
passenger seat of the car. Ybarra then drove to Gonzalez's
house. After Gonzalez got out of the car, the rest of the
passengers changed positions. Rodriguez moved to the front
passenger seat, Garza sat behind Rodriguez in the right back
passenger seat, and appellant sat behind Ybarra in the left
back passenger seat. As Ybarra drove out of Gonzalez's
neighborhood, Rodriguez leaned out of the front passenger
seat and fired the gun once. Ybarra became nervous about
Rodriguez and appellant shooting the gun, and decided to
drive them back to Rodriguez's house before taking Garza
home. Ybarra testified, "I wanted to get that gun out of my
car as quick as I could."

As Ybarra was driving toward Rodriguez's house he saw two
patrol cars pass. One of the cars shined its spotlight on the car
and activated its emergency lights. Although appellant told
him not to stop, Ybarra stopped the car. At this time, Ybarra
testified that everyone was afraid because the gun was sitting
in the front seat of the car. Ybarra told Rodriguez to throw the
gun out of the window. Appellant told Rodriguez to shoot the
police officer. Rodriguez gave the gun to appellant explaining
that he did not want to shoot the police officer. At this point,

Ybarra sped up because he was afraid if he stopped for the police car that appellant would shoot him. As Ybarra was driving he heard three to four gun shots in quick succession. Shortly after the shooting, when Ybarra slowed the car to make a turn, Rodriguez and Garza jumped out of the moving car. Later, appellant jumped out of the car. Ybarra eventually pleaded guilty to evading arrest with a motor vehicle.

**\*2** Brianna Garza testified and gave an account similar to that of Ybarra. Garza testified that it was her understanding that she would be driven home before the men began shooting the gun. She recounted the initial shooting in the field, Rodriguez shooting the gun while the car was moving, the police attempting to stop them, appellant telling Rodriguez to shoot the officer, and Rodriguez refusing to do so. When appellant took the gun and said he was going to shoot the officer, Garza hit the back of the gun in an attempt to stop appellant from shooting. Garza thought that appellant attempted to point the gun at Ybarra because Ybarra was stopped for the police car and did not want to flee. Garza testified that as appellant began shooting, she and Rodriguez jumped out of the car. Garza and Rodriguez ran to Rodriguez's house. Appellant returned to Rodriguez's house approximately ten minutes later, but left again when the police arrived. Garza pleaded guilty to evading arrest.

Appellant was convicted of aggravated assault against a public servant and sentenced to 50 years in prison.

## II. SUFFICIENCY OF THE EVIDENCE

In a single issue appellant claims the evidence is insufficient to support his conviction. Specifically, appellant contends that the evidence does not sufficiently corroborate the testimony of the accomplice witnesses.

In evaluating the sufficiency of the evidence, we must view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

The accomplice-witness rule provides that a "conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex.Code Crim. Proc. art. 38 .14. The rule derives

from the legislative determination that accomplice testimony must be taken with a degree of caution. *Nolley v. State,* 5 S.W.3d 850, 852–53 (Tex.App.-Houston [14th Dist.] 1999, no pet.). The underlying rationale is that the accomplice is a corrupt source who may well have improper incentives when testifying against the accused-e.g., to redirect blame or to gain favor with the State in exchange for a reduced punishment. *Wincott v. State,* 59 S.W.3d 691, 698 (Tex.App.-Austin 2001, pet. ref'd). For these reasons, an accomplice witness is a "discredited witness," and regardless of how completely the accomplice may outline the facts of a case, the jury may not convict the accused without additional corroborating evidence. *Walker v. State,* 615 S.W.2d 728, 731 (Tex.Crim.App.1981); *Gaston v. State,* 324 S.W.3d 905, 908–09 (Tex.App.-Houston [14th Dist.] 2010, pet. ref'd).

Before turning to whether the evidence was sufficiently corroborated, we review whether Ybarra and Garza were accomplice witnesses. [1] An accomplice is an individual who participates with a defendant before, during, or after the commission of the crime and acts with the requisite culpable mental state. *Cocke v. State,* 201 S.W.3d 744, 747 (Tex.Crim.App.2006); *Yost v. State,* 222 S.W .3d 865, 871 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd). Such participation must involve an affirmative act that promoted the commission of the offense with which the accused was charged. *Paredes v. State,* 129 S.W.3d 530, 536 (Tex.Crim.App.2004).

**\*3** To sustain a conviction for aggravated assault of a public servant the evidence must demonstrate that: (1) the person intentionally or knowingly threatened another with imminent bodily injury, (2) the person used or exhibited a deadly weapon during the commission of the assault, and (3) the offense was committed against a person the actor knew was a public servant while the public servant was lawfully discharging an official duty. Tex. Penal Code §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B). Pursuant to Texas Penal Code sections 7.01 and 7.02, an individual can be convicted as a party to an offense if that offense was committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. Tex. Penal Code § 7.01. A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Penal Code § 7.02(a)(2). Therefore, we review the record to determine whether the evidence reflects that Ybarra and Garza could have been convicted as parties to the

offense of aggravated assault of a public servant. Appellant did not request an accomplice witness instruction at trial, nor does he argue that Ybarra and Garza were accomplices as a matter of law. Therefore, we address whether Ybarra and Garza were accomplices as a matter of fact. *See Druery v. State,* 225 S.W.3d 491, 497–98 (Tex.Crim.App.2007) (jury instruction is given on an accomplice as a matter of law when witness is charged or could be charged with the offense or lesser-included offense; when the evidence is conflicting as to whether witness was accomplice, jury decides whether witness is an accomplice as a matter of fact).

The record reflects that Ybarra and Garza were present when the offense occurred, and that they participated in the offense of evading arrest or detention. Ybarra was charged with evading arrest or detention in a motor vehicle, a state jail felony. *See* Tex. Penal Code § 38.04(b)(1)(B). Garza was charged with evading arrest on foot, a Class A misdemeanor. *See id.* § 38.04(a). However, the record does not reflect that Ybarra and Garza participated with appellant before, during, or after the commission of the offense of aggravated assault of a public servant, or acted with the requisite culpable mental state to commit that offense.

Both Ybarra and Garza testified that they knew a gun was in the car and that appellant and Rodriguez intended to shoot it in an open area. Garza expected to be dropped off at her home before any shooting began. Ybarra testified he attempted to stop the car when the police initiated the traffic stop, and that he only drove away because he feared appellant would shoot him. Ybarra further testified that he instructed Rodriguez to throw the gun out of the window. Similarly, Garza testified that she hit the back of the gun in an attempt to prevent appellant from shooting Whitlock. There is no evidence that Ybarra or Garza took any affirmative act to assist in shooting Whitlock. While they knew of the gun and the plan to shoot it prior to commission of the offense, they believed appellant and Rodriguez intended to shoot the gun in an open area. Ybarra and Garza did not anticipate that appellant would shoot a police officer, nor did they act with the requisite culpable mental state to commit the offense of aggravated assault of a public servant. The fact that Ybarra and Garza were in the car, coupled with their knowledge of the weapon when appellant shot Whitlock, does not render them accomplice witnesses to the charged offense. *See Zuniga v. State,* 393 S.W.3d 404, 414 (Tex.App.-San Antonio 2012, pet. ref'd) (witness was not an accomplice simply because he was a passenger in the car at scene of murder).

 **\*4** Appellant further argues that Ybarra and Garza participated in a conspiracy to shoot the weapon, and could be considered accomplices under section 7.02 of the Texas Penal Code. If in the attempt to carry out a conspiracy to commit one felony another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out the conspiracy. Tex. Penal Code § 7.02(b); *Zamora v. State,* 432 S.W.3d 919, 922 (Tex.App.-Houston [14th Dist.] 2014, no pet.).

Appellant argues that Ybarra and Garza knew that the gun was in the car and discussed a plan to shoot the gun in an open area. Therefore, appellant argues, the parties should have "foreseen that shooting a firearm into a neighborhood might attract the attention of law enforcement and that in entering into that conspiracy someone might get shot."

The record does not reflect that Ybarra and Garza were accomplice witnesses because they were criminally responsible for appellant's actions under the conspiracy theory of party liability. Appellant argues that by planning to discharge a firearm in the city, the group should have anticipated the potential for the offense of aggravated assault of a public servant.

Appellant's theory is not supported by the evidence or the Penal Code definition of co-conspirators. Section 7.02(b) of the Penal Code provides that a person can be held criminally responsible under the law of parties if, in the attempt to carry out a conspiracy to commit one felony offense, another felony is committed by one of the conspirators. *See Hooper v. State,* 214 S.W.3d 9, 13–14 (Tex.Crim .App.2007). Discharging a firearm in a municipality is a misdemeanor, not a felony. *See* Tex. Penal Code §§ 42.01(a)(7), (d) (discharge of a firearm in a public place is a Class B misdemeanor) & 42.12(a), (b) (discharge of a firearm inside the corporate limits of a municipality having a population of 100,000 or more is a Class A misdemeanor). The record does not contain evidence of a conspiracy to commit a felony.

Appellant's argument is predicated on the idea that Ybarra and Garza were accomplices to aggravated assault of a public servant. The record does not support appellant's assertion. The record reflects that Ybarra and Garza did not participate in the shooting of the police officer, did not conspire to shoot a police officer, nor could they have anticipated when

they got in the car with appellant that he would shoot a police officer. If a State's witness has no complicity in the offense for which an accused is on trial, the witness's testimony is not that of an accomplice witness whatever may have been the witness's complicity with the accused in the commission of other offenses. *Gamez v. State,* 737 S.W.2d 315, 322 (Tex.Crim.App.1987). There is no evidence that Ybarra and Garza were appellant's accomplices as a matter of fact; therefore, there is no requirement of corroboration. *See* Tex.Code Crim. Proc. art. 38.14.

**\*5** Based on all the evidence presented, including the testimony of Ybarra and Garza, viewed in the light most favorable to the verdict, we conclude a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319. We therefore overrule appellant's sole issue, and affirm the trial court's judgment.

Footnotes

1    In his brief appellant contends that Ybarra, Garza, and Rodriguez were accomplice witnesses. Rodriguez, however, did not testify; therefore, we confine our review to Ybarra and Garza.

     © 2015 Thomson Reuters. No claim to original U.S. Government Works.