

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00086-CR

Freddy **VILLANUEVA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 63rd Judicial District Court, Val Verde County, Texas
Trial Court No. 2021-0284-CR
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: June 28, 2023

AFFIRMED

A jury convicted Freddy Villanueva of murder. The jury assessed punishment at forty years confinement and imposed a $5,000 fine. On appeal, Villanueva asserts two issues: (1) the evidence is insufficient to sustain Villanueva's guilt as a party to the offense; and (2) Villanueva was egregiously harmed by the inclusion of particular language in the charge. We affirm.

### BACKGROUND

On March 23, 2019, Villanueva, Kelvin Brown, Lennox Matthews, and Mario Rivera-Vasquez went to several bars in Del Rio, Texas. The four rode in Brown's vehicle, and either

Brown or Matthews drove. Villanueva neither owned a car nor drove Brown's vehicle that night. After spending the evening at multiple bars, the four went to Villanueva's home. Villanueva lived with his mother—Julie Villanueva—who was present at the residence with several other people, including Manuel Sanchez, when the group arrived.

After returning home, Villanueva became "mad" with Sanchez and told him to get off his property. Unprovoked, Villanueva punched Sanchez with sufficient force that Sanchez was immediately knocked to the ground. Sanchez never stood up again. Afterwards, Brown and Rivera-Vasquez continued to beat Sanchez with their hands and feet until Sanchez was rendered unconscious. As the attack continued, Villanueva had to be restrained from further participation.

Both Rivera-Vasquez and Matthews testified at trial and provided similar accounts. Rivera-Vasquez testified Villanueva "threw the first punch." Matthews testified that "[Villanueva] came out from the house while they were talking, and he just laid back and hit [Sanchez] with his fist. Then [Sanchez] drops to the ground, tried to get back up, and then [Rivera-Vasquez] and [Brown] was [sic] on top of him." Brown then dragged Sanchez by his legs to the edge of the yard near the curb where Sanchez had parked his vehicle.

The four then left in Brown's vehicle. Prior to their departure, Matthews had picked up Sanchez's cell phone, and a member of the group destroyed the chip to the phone some time after they left. A little while later, Villanueva received a call from his mother, Julie. Julie was "tripping,"[1] and Villanueva told the group they needed to return to his home because Sanchez had been beaten unconscious, was laying in his front yard, and Julie wanted him moved. Rivera-

---

[1] It is unclear what Villanueva meant when he stated his mother was "tripping." Two interpretations were suggested at trial: Under the first interpretation, Julie was incredibly angry. Under the second interpretation, Julie was high on cocaine.

Vasquez testified it was understood they were returning to Villanueva's home to "dispose of the body." Matthews drove the four back to the residence in Brown's vehicle at Villanueva's request.

Sanchez had originally driven to Villanueva's residence in a red Dodge Nitro. When the group returned to the residence, Sanchez—still alive, although unconscious—was placed in the backseat of his own vehicle, which Rivera-Vasquez drove to a tire shop. Sanchez was left inside the car. Rivera-Vasquez testified, "[Villanueva] suggested to me to leave him at the tire shop." Matthews—the driver—testified that Villanueva directed him to park on the side of a street and wait for Rivera-Vasquez to return to the car. Matthews explained: "[Villanueva] told me, stay here, because I guess [Villanueva] knew where [Rivera-Vasquez] went." After leaving Sanchez at the tire shop, Rivera-Vasquez returned to where Villanueva had directed Matthews to park.

In the morning, Mario Aguirre, the owner of the tire shop, contacted law enforcement after finding Sanchez deceased in the red Dodge Nitro. Sanchez's severely-beaten body was wedged face-down on the floor in the backseat—his head pushed under the front seat and his left shoulder lodged under the back seat. The medical examiner later observed that Sanchez had numerous abrasions to his body and "significant" hemorrhaging to his neck muscles, consistent with his neck having been stretched. She determined that Sanchez died from "positional asphyxiation," and that it was "impossible for him to get under there [the seat] on his own accord."

Detective Oscar Gonzalez with the Del Rio Police Department served as the lead investigator assigned to Sanchez's murder. A few days after the incident, Gonzalez met with Julie. She described what transpired at her residence. The day after meeting with Julie, law enforcement attempted to locate Villanueva at his residence; however, it appeared to law enforcement that his residence had been "emptied out."

Police also interviewed Rick Menchaca. Menchaca was a longtime friend of Julie. Menchaca testified he was at Villanueva's residence during the incident. He stated that he saw

both Sanchez and Villanueva at the residence. He further testified that, although he never observed a fight, he heard a "commotion" or "altercation" taking place in the front yard when he was inside the residence, and when he came outside, Sanchez was on the ground, and Villanueva had left.

Police later arrested Villanueva for Sanchez's murder, and Villanueva gave a recorded statement to Gonzalez that was played to the jury at trial. In his statement, Villanueva admitted he went to his residence with Brown and Rivera-Vasquez (although he left out Matthews); became angry with Sanchez and "shoved" or "pushed" him; and Villanueva had to be held back afterward.

After finding Villanueva guilty of murder, the jury assessed punishment at forty years confinement and a $5,000 fine. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Villanueva asserts the evidence is legally insufficient to sustain a guilty verdict.

### Standard of Review

In a sufficiency claim, our role is "restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). The essential elements of the offense are defined by the hypothetically correct jury charge for the case. *Ramos v. State*, 407 S.W.3d 265, 269 (Tex. Crim. App. 2013). Conflicting inferences are resolved in favor of the verdict. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Direct and circumstantial evidence are treated equally, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In reviewing the sufficiency of the evidence, we look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction." *Id.* (citing *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987)). When the trial court's charge authorizes the jury to convict on more than one theory, as here, the verdict of guilty will be upheld if the evidence is sufficient on any one of the theories. *Id.*

### *Applicable Law*

As applicable to our analysis, a person commits the offense of murder if the person "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(2). "A person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b). Under the law of parties, "[a] person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

### *Analysis*

According to Villanueva, the evidence is legally insufficient to sustain a guilty verdict because (1) Villanueva threw a single punch and did not further participate in beating Sanchez; (2) Villanueva was incapable of causing the group to return to dispose of Sanchez's body because

he did not own a car or drive; and (3) there is no evidence that Villanueva aided or directed how Sanchez's body was placed in the backseat of his vehicle.

The State responds that there is legally sufficient evidence that Villanueva, either acting alone or together with Matthews, Rivera-Vasquez, and/or Brown as a party, with the intent to cause serious bodily injury to Sanchez, committed an act clearly dangerous to human life that caused the death of Sanchez by kicking and hitting Sanchez in the face and the body with Villanueva's hands and feet and/or by placing the body of Sanchez in the back of a car in such a manner that asphyxiated Sanchez.

We consider the events occurring before, during, and after Sanchez's death. The group went drinking that night together; attacked Sanchez together; and left and returned together to "dispose of" Sanchez's body. Focusing on the fact that he hit Sanchez only once, Villanueva places great weight on the medical examiner's conclusion that Sanchez did not die from being hit and kicked. However, this argument overlooks that a rational jury could conclude the beating resulted in Sanchez being rendered unconscious, a necessary predicate for his death as a result of him being shoved into and wedged under the backseat in a manner the medical examiner described as "impossible for him to get under there on his own accord," causing his death by positional asphyxiation.

Significantly, Villanueva (1) did not attempt to stop the attack on Sanchez—rather, some evidence indicated he would have further participated in the attack were he not physically restrained; (2) did not attempt to call 911; and (3) did not seek aid for Sanchez after the beating. *See Curtis v. State*, 573 S.W.2d 219, 222 (Tex. Crim. App. 1978) ("The fact that an intervening bystander stopped appellant's participation in the fight did not negate appellant's intent to aid in the assault."); *Humaran v. State*, 478 S.W.3d 887, 897 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) ("The jury could have reasonably concluded that by failing to report the murder when

she had the chance to do so, appellant was actually attempting to conceal evidence of her guilt."). A rational jury could conclude from the totality of the circumstances and cumulative effect of the evidence that Villanueva had both the intent to cause serious bodily injury to Sanchez and that he promoted or assisted his co-defendants to hit and kick Sanchez. *See Guevara*, 152 S.W.3d at 49.

A rational jury could have also believed Villanueva (1) solicited the group to return to his home to dispose of Sanchez's body after Julie called Villanueva; (2) maintained a motive to remove Sanchez's body from his own yard; (3) directed Rivera-Vasquez's disposal of Sanchez's body; and (4) directed Matthews where to pick up Rivera-Vasquez after Rivera-Vasquez disposed of Sanchez's body.[2] A rational jury could reasonably infer from the totality of these circumstances and the cumulative effect of these facts that Villanueva intended to and did promote or assist in the disposal of Sanchez's body in a manner that resulted in his death. *See Guevara*, 152 S.W.3d at 49. The jury could have also inferred guilt from Villanueva's abandonment of his home by the time law enforcement sought him out days later. *See Foster v. State*, 779 S.W.2d 845, 849 (Tex. Crim. App. 1989) ("Evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn.").

Applying the appropriate standard of review, we hold a rational jury could reasonably infer from Villanueva's acts, words, and conduct, and all of the surrounding circumstances taken together, that (1) Villanueva intended to cause serious injury to Sanchez by hitting him; (2) shoving a severely beaten and unconscious person under the back floorboard of the car

---

[2] Accomplice witness testimony was corroborated by the testimony of Menchaca, the information Julie provided to law enforcement, and Villanueva's own statement to police. *See Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984) ("Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction."); *see also Jackson v. State*, 516 S.W.2d 167, 171 (Tex. Crim. App. 1974) ("It is well established that appellant's admission or confession, under most circumstances, will be sufficient to corroborate the accomplice witness.").

constituted an act clearly dangerous to human life that caused Sanchez's death; and (3) Villanueva was a party to that act by soliciting and directing it. We overrule Villanueva's first issue.

**JURY CHARGE**

In his second issue, Villanueva asserts the trial court erroneously charged the jury with "hitting and kicking" language as alleged in the indictment but contrary to the evidence at trial.

### *Standard of Review*

Our review begins with a determination of whether error exists in the charge and, if so, whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The degree of harm necessary for reversal depends on whether the defendant preserved the error by objection. *Id.* Where, as here, the defendant did not object to the charge, we will not reverse for jury charge error unless the record shows "egregious harm" to the defendant. *Id.*

"Egregious harm" results from error affecting the very basis of the case, depriving the defendant of a valuable right, or vitally affecting a defensive theory. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). "Reversal is not required unless the error is so egregious that the defendant was denied a fair and impartial trial." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). To assess whether charge error is egregiously harmful, we consider (1) the entire jury charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information contained in the record as a whole. *Gelinas v. State*, 398 S.W.3d 703, 705 (Tex. Crim. App. 2013).

### *Applicable Law*

A trial court must deliver to the jury a written charge distinctly setting forth the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14. The jury charge must apply the law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127–28 (Tex. Crim. App. 2004). The

trial court's jury instructions should only include alternative theories of how a defendant committed an offense alleged in the indictment if the evidence presented at trial supports those theories. *Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012). Neither the manner nor the means of committing the offense needs to be unanimously agreed upon by the jury. *Ngo*, 175 S.W.3d at 746 & n.27. The jury need only unanimously agree that the defendant caused the victim's death. *Id.*

*Analysis*

Villanueva argues that the evidence showed Sanchez died from a lack of oxygen, not from hitting and kicking. According to Villanueva, because the medical examiner never claimed that Sanchez choked on his own blood or was unable to breathe due to blood obstructing the flow of air to his brain, the inclusion of "hitting and kicking" language in the charge—although alleged in the indictment—should not have been submitted to the jury as a cause of death. Villanueva asserts the "hitting and kicking" language should have been omitted from the charge or, at best, submitted solely as an extraneous offense and limited to the issue of the actors' knowledge or intent when placing Sanchez's body in the car.

The State submits the trial court correctly applied the law and facts to the case. The State asserts it is well-established that a charge is valid so long as any one of the manner and means alleged caused the death, or the manner and means alleged "cooperated together" to cause the death. *See Zanghetti v. State*, 618 S.W.2d 383, 387 (Tex. Crim. App. 1981); *Medina v. State*, 49 S.W. 380, 380–81 (Tex. Crim. App. 1899). According to the State, what controls is whether an alleged manner and means could have "played a role in the death." *Smith v. State*, No. 05-18-00491-CR, 2019 WL 1615353, at *12 (Tex. App.—Dallas Apr. 15, 2019, pet. ref'd) (mem. op., not designated for publication); *Rocha v. State*, No. 05-18-00161-CR, 2019 WL 1467964, at *8–9 (Tex. App.—Dallas Apr. 3, 2019, pet. ref'd) (mem. op., not designated for publication). The State

accordingly argues the evidence at trial showed Sanchez was hit, kicked, and placed in a car in a manner that resulted in positional asphyxiation, and "but for" Sanchez being rendered unconscious from the hitting and kicking, the actors would not have been able to put him in the back of the car in the manner that caused his death.

Based on record evidence, we agree with the State that a reasonable jury could find hitting and kicking played a role in Sanchez's death. A reasonable jury could have believed that but for Sanchez having been rendered unconscious by being hit and kicked, he could not have been placed in the car in a way that resulted in his death by positional asphyxiation. We accordingly find no error by the trial court's inclusion of "hitting and kicking" language in the charge. Having found no error in the charge, we need not address harm. *See Ngo*, 175 S.W.3d at 738; TEX. R. APP. P. 47.1. We overrule Villanueva's second issue.

## CONCLUSION

Having overruled Villanueva's issues, the judgment of the trial court is affirmed.

Lori I. Valenzuela, Justice

DO NOT PUBLISH